JOHN C. MANNING V. THE SAN ANTONIO CLUB.

(Case No. 1620.)

1. JURISDICTION OVER SOCIAL CLUBS.— Where an individual has a right given by statute to be a member of a society created by statute, the courts will interfere to protect that right, regardless of the question of property. (Citing The People v. Medical Society, 32 N. Y., 187.)

2. CONTROL OF CLUBS AND LITERARY SOCIETIES OVER THEIR MEMBERS.— Clubs or societies, whether religious, literary or social, have a right to make their own rules regarding the admission and exclusion of their members; such rules are articles of agreement to which all who become members are parties.

3. SAME.— The fact that a social club is incorporated can in no respect affect its right to regulate the admission and expulsion of members, unless there be something in the by-laws to control it.

4. ACTION — JURISDICTION.— An incorporated society, organized for literary purposes, but having neither capital stock nor corporate property, adopted the following by-law: "Any member shall forfeit his membership to the club whose conduct shall be pronounced by a vote of the majority of the board of directors present at a meeting to have endangered the welfare, interest or character of the club." Under that by-law a member was expelled. Held, that in the absence of a by-law requiring the member to be notified of the fact that he was to be tried, the action of the directors, though without notice, will not be revised by the courts.

5. BILL OF RIGHTS.— The rights of a member of such a club are not such as come within the meaning of sec. 19 of the Bill of Rights.

6. SAME.— When parties form voluntary associations for social or literary purposes, and adopt rules by which to regulate their conduct and measure their rights, such rules must govern, and the bill of rights cannot be looked to for the purpose of nullifying their voluntary compact.

APPEAL from Bexar. Tried below before the Hon. Geo. H. Noonan.

The appellant, who brought this suit, was a member of the San Antonio Club, a corporation created, organized and doing business under the laws of Texas at San Antonio, and formed for literary purposes, to promote social intercourse among its members and to provide them the conveniences of a club house. The club had no capital stock. Its funds are made up of initiation fees and monthly dues; but it owns valuable personal property, consisting of furniture, fixtures and other appointments in the club house, a valuable library and reading room and a stock of wines, liquors and cigars.

The board of directors of the club, moved (as appellant alleged) "by a spirit of malice and a predetermination to expel him; without any cause or provocation, irregularly, without authority, without notice to him of the nature of the charges against him, and without giving him an opportunity to be heard in his defense, on the

23d of November, 1883, expelled and dropped him from the roll of members of the club, and thereby deprived him of all his rights, privileges and franchises as one of its members."

The appellant immediately, on being informed of his expulsion, demanded of the board of directors that they inform him of the nature of the charges against him, by whom preferred, and that he be given an opportunity to be heard in his defense, which request they refused to grant.

The appellant then applied for a writ of *mandamus* to compel the board of directors to restore him to all his rights, privileges and franchises as a member of the club.

An alternative writ of *mandamus* was issued and due return made thereto, but the court, upon the pleadings, refused to issue a peremptory writ, and an appeal was taken to this court.

The return admitted the expulsion of appellant, and set forth causes unnecessary to here state; they denied that they were prompted by malice, and alleged that appellant knew that charges would be presented against him — knew that his expulsion would be attempted, and failed to attend and make defense.

The directors of the club, to whom the alternative writ was directed, made return thereto, stating that the appellee was a corporation organized for literary purposes; to promote social intercourse among its members and to provide them the conveniences of a club house; that the club had no capital stock, no corporate property, except such furniture and other paraphernalia as are needed and customary, all of which were in constant use, subject to deterioration and wearing out by such use, and none of which was kept or used for pecuniary profit or gain, and that it was no part of its purpose to make such profit or gain; that the club had adopted for its proper government a constitution or by-laws and rules, which are attached to the return; that among other provisions of the constitution or by-laws, the following are contained:

#### " ARTICLE IV.

" The name of every member failing to pay his dues within one month after the same become due shall be placed in the frame provided for notices, of which the treasurer shall inform him in writing; and if the said dues are not paid within thirty days thereafter, he shall cease to be a member of the club, and his name shall be erased from the books, unless he can show satisfactory reasons for the non-payment thereof to the board of directors."

## " ARTICLE XI.

"Sec. 6.   Any member shall forfeit his membership to the club whose conduct shall be pronounced, by a vote of the majority of the board of directors present at a meeting, to have endangered the welfare, interest or character of the club."

The assignments of error noticed were as follows:

1st. "The court erred in dismissing the proceedings upon the ground that it had no jurisdiction to grant the relief asked for by the relator."

2d. "The court erred in holding that the act of the board of directors of the San Antonio Club in expelling the relator from the club, it being a social club, is conclusive, and, whether regular or irregular, their act is not a subject for revision by the courts of the state."

3d. "The court erred in holding that under sec. VI, art. XI, of the constitution of the San Antonio Club, the board of directors were authorized to expel and disfranchise plaintiff without notice to him of the nature of the charges preferred against him; of the time they would meet to consider the same, and offering an opportunity to the plaintiff to defend himself."

4th. "The court erred in refusing to issue the peremptory writ of *mandamus* as prayed for, because the return to the alternative writ does not show that the board of directors gave the plaintiff notice of the meeting held on the 23d day of November, 1883, nor that any charges were preferred against plaintiff that would be investigated by them at that meeting, nor that plaintiff had any opportunity to defend himself thereat."

*Breneman & Bergstrom*, for appellant, on the proposition that courts will inquire into the acts of incorporated societies which pass on the rights of their members, cited:   Pulford *v.* Fire Department of Detroit, 31 Mich. (9 Post), 458; Fisher *v.* Keane, 27 Eng. Rep. (Moak's notes), 586 (11th Chanc'y Div., 353); Wachtel *v.* Noah, 60 How. Pr., 424; State *v.* Milwaukee, etc., Co., 47 Wis., 670; Commonwealth *v.* Penn., etc., Co.; 2 Serg. & R., 141; Cannon *v.* Toronto Corn Ex., 27 Grant's Chancery (Upp. Can.), 23; Cannon *v.* Huron College, 27 Grant's Chancery (Upp. Can.), 605; De Lacy *v.* Neuse River, etc., Co., 9 Am. Dec., 274; Southern Plank Road Co. *v.* Hixon *et als.*, 5 Ind., 165; High on Ex. Leg. Rem., sec. 295; Angell & Ames on Corp., secs. 408–420 (9th ed.).

That in such cases *mandamus* is the proper remedy, they cited:

The People *ex rel.* Bartlett *v.* Medical Society, 32 N. Y., 187; People *v.* New York Society, 5 N. Y. (Supreme Court), 85 (3 How., 361); High on Ex. Leg. Rem., secs. 291–294; Field on Corp., secs. 227, 228, 500; Barrows *v.* Mass. Med. Soc., 12 Cush., 402.

· *Waelder & Upson*, for appellee, on the proposition that social clubs have the right to adopt their own rules for their own government, cited: 2 Wait's Act. & Def., 257; High on Mand., §§ 292, 296, 297, 298; Field on Corp., §§ 63, 65; Boone on Corp., § 284; State *ex rel.* Soares *v.* Hebrew Congregation, 30 La., 205 (33 Am. Rep., 217); Dickenson *v.* Chamber of Commerce, 29 Wis., 45 (9 Am. Rep., 545); People *ex rel.* Ditcher *v.* German United Evangelical Church, 53 N. Y., 110; Crocker *v.* Old South Society, 106 Mass., 496; Sale *v.* First Baptist Church (Iowa, 1883), 16 Rep., 749; Green *v.* Afr. Met. Church, 1 Serg. & R., 254.

· DELANY, J. COM. APP.— The first and second assignments of error will be considered together. And these assignments must be regarded rather as presenting inferences drawn by counsel from the judgment rendered, than rulings of the court. The presiding judge did not write out his conclusions of law. He simply gave judgment in the following words: "After argument, it being the opinion of the court that no case is presented which would warrant the granting of a peremptory *mandamus*, it is ordered, adjudged and decreed that the alternative writ of *mandamus* heretofore issued be discharged."

The first assignment is that the court "erred in dismissing the proceedings on the ground that it had no jurisdiction to grant the relief asked for by the relator." It is clear that this assignment does not correctly represent the judgment, for we can only conjecture the grounds upon which the court rested its decision.

Upon these two assignments appellant presents this proposition: "Courts will inquire into the regularity of the acts of incorporated clubs or societies, when they undertake to pass upon the rights of their members; particularly when such organizations own property, and such acts deprive the members of rights in the property."

Courts will not always inquire into the irregularity of the acts of an incorporated club or society, although the society — as distinguished from the individual members — may own property; and they will sometimes interfere to protect the individual's right to membership, whether the society owns property or not. Where an individual has a right, given by statute, to be a member of a society created by the statute, the court will interfere to protect that

right, regardless of the question of property. This is illustrated by the case of The People *v.* Medical Society, 32 N. Y., 187. The legislature of New York had by statute established medical societies in the several counties, and had provided that physicians possessing certain qualifications should be entitled to membership. One Bartlett, at the date of his application, possessed the prescribed qualifications, but the society rejected him, because at a former period he had practiced what the medical faculty styled empiricism. He applied for a *mandamus* to enforce his right, and it was sustained.

And when membership in certain societies confers upon the individual important benefits, as in aid societies, benevolent societies, etc., or peculiar advantages in trade and business, as in chambers of commerce, these are important and valuable rights which are protected by the law of the land, and are generally secured in some way by the charter of incorporation. All the cases cited by appellant's counsel are not within our reach; but we think they will generally be found to belong to one or the other of these classes. See 2 Serg. & Rawle, 141; State *v.* Chamber of Commerce, 47 Wis., 670; Plank Road Co. *v.* Hixon, 5 Ind., 165; Roehler *v.* Mechanics' Aid Society, 22 Mich., 86.

But we think it has been generally held that clubs or societies, whether religious, literary or social, have the right to make their own rules upon the subject of the admission or exclusion of members, and these rules may be considered as articles of agreement to which all who become members are parties. If in violation of these rules a member is expelled, it has in some instances been held that a *mandamus* will issue to reinstate him. Commonwealth *v.* Penn. Ben. Inst., 2 Serg. & R., 140; Green *v.* African Meth. Society, 1 id., 254.

In the case of the German Reformed Church *v.* Seibert, it was determined that if a member be expelled, even in violation of the rules of the church, his remedy is by appeal to the higher courts of the church and not to the civil tribunal. 3 Barr., 282. See, also, People *v.* German United Evangelical Church, 53 N. Y., 103.

In the case of French *v.* Old South Society, 106 Mass., 479, it was held that a member who forfeited his membership by abandoning the church forfeited also his title to a pew in the church, that condition having been incorporated in the deed by which he held it.

The fact that a club or society is incorporated would not, we think, in any way affect its right to make its own rules, unless there was something in its charter or in the general law under which it was incorporated which controlled it in this respect.

In the case before us the club was organized for literary purposes; to promote social intercourse among its members, and to provide them the conveniences of a club house. It had no capital stock, and no property, except the furniture of its rooms. All the rights and interest of a member of the club in its property or privileges ceased with the termination of his membership. All members were required to sign the constitution or by-laws. No definite mode of trial was pointed out by the by-laws; but section 6 of article 11 provides as follows: " Any member shall forfeit his membership to the club whose conduct shall be pronounced, by a vote of a majority of the board of directors present at a meeting, to have endangered the welfare, interest or character of the club."

Appellant does not pretend that, in his expulsion, the board of directors violated in any way the by-laws of the club. But he insists that he was entitled to a notice of the proceedings against him, and to a formal trial. And that he was entitled to this whether it was provided for in the by-laws or not. And for this he appeals to section 19 of the Bill of Rights.

It is true that in most, perhaps all, of the cases which occur in the books, notice to the party is treated as necessary to the validity of the proceedings. But it is also true that most, or all, of these cases involve rights of such a character as are recognized and protected by the law of the land, or else the articles of association provide for notice to the party and some method of trial. The question then is this: " Were the rights and privileges of appellant as a member of the San Antonio Club, such as come within the meaning of section 19 of the Bill of Rights?" That section is as follows: "No citizen of this state shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by due course of the law of the land."

These guaranties were mainly intended to protect the citizen against oppression by the government; but they do not protect him against himself or against his own agreements. When, therefore, persons enter into organizations for purposes of social intercourse or pleasure or amusement, and lay down rules for their government, these must form the measure of their rights in the premises, and it is vain to appeal to the Bill of Rights against their own agreements.

We have not noticed the assignments of error in detail; but we have considered the questions raised by them. Our opinion is that the judgment should be affirmed.

AFFIRMED.

[Opinion adopted November 28, 1884.]